OPINION
 

 WOODARD, Justice.
 

 A jury convicted Harold Lindsay De Freece, Appellant, of murder with a deadly weapon, and the trial court assessed punishment at 60 years’ confinement in the Texas Department of Criminal Justice. In eight points of error, Appellant seeks review of the trial court’s concomitant judgment. We affirm.
 

 Each of Appellant’s points of error, allege violations of either the United States Constitution (Points of Error Nos. One, Three, Five and Seven) or the Texas Constitution (Points of Error Nos. Two, Four, Six and Eight). Points of Error Nos. One and Two argue that the trial court’s failure to appoint an expert to assist Appellant in evaluating, preparing and presenting his defense of insanity violated his rights to due process. Similarly, Points of Error Nos. Three and Four assert that the trial court’s failure deprived Appellant of equal protection. Points of Error Nos. Five and Six contend that trial counsel was rendered ineffective in presenting Appellant’s case due to the lack of expert psychiatric assistance. In Points of Error Nos. Seven and Eight, Appellant argues that the trial court’s failure denied him the right of compulsory process. Since Appellant’s sole argument under each point is premised entirely upon whether the trial court erred in failing to appoint a psychiatric expert to assist him prior to and at trial, resolution of this issue is dispositive of each of the points of error. As a result, we will address the points simultaneously in that context.
 

 Prior to trial, the State requested that Appellant be examined to determine his competency to stand trial. Within its motion, the State recognized that at the time of the offense, Appellant was under the care of the Eagle Pass Mental Health Mental Retardation Center. In compliance with Tex.Code Crim.Proc.Ann. arts. 46.02 and 46.03 (Vernon 1979), the trial court ordered that a disinterested expert, experienced and qualified in mental health, be appointed to examine Appellant with regard to his competency to stand trial and sanity at the time of the offense. Accordingly, Appellant was psychologically evaluated at the Vernon State Hospital from which voluminous written reports were submitted to the trial court. After a jury found Appellant incompetent to stand trial, he was returned to Vernon State Hospital for restoration. Subsequently, Appellant was found competent to stand trial, and trial on the merits was scheduled.
 

 
 *253
 
 Prior to trial, Appellant filed Defendant’s Motion for Provision of Psychiatric Expert to Assist Defense and for Diagnostic Testing to Prepare Effective Defense which stated that he would pursue an insanity defense. The motion requested the appointment of an additional, but unspecified, psychiatrist in order to assist defense counsel in trial preparation. In support of his motion, Appellant argued that the United States Supreme Court, in
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), stated that due process required appointment of such a psychiatric expert as “a member of the defense team, to serve the defendant’s interest in the context of the adversarial system.”
 

 On the day Appellant’s cause was called to trial, Appellant announced by written motion that he was not ready for trial suggesting that the court’s failure to appoint an additional psychiatrist would cause Appellant to be ineffectively assisted by counsel. In re-urging his prior motion based upon
 
 Ake,
 
 Appellant sought support in a United States Supreme Court dissenting opinion in which Justice Marshall, the author of
 
 Ake,
 
 stated the “Texas’ provision of a ‘disinterested’ expert ... does not satisfy
 
 Ake.
 
 ”
 
 Granviel v. Texas,
 
 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990). Marshall’s dissent was in response to the Court’s denial of certiorari regarding the Fifth Circuit’s opinion in
 
 Granviel v. Lynaugh,
 
 881 F.2d 185 (5th Cir.1989),
 
 cert. denied,
 
 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990). The trial court overruled Appellant’s motion.
 

 In his brief, Appellant argues that we must, in accordance with
 
 Ake,
 
 determine whether the State must provide access to an expert who is designated to assist the defense. In short, Appellant requests this Court to declare the Texas statutes inadequate to pass constitutional muster in the appointment of psychiatric assistance to indigents. The Supreme Court has interpreted the due process mandates of the United States Constitution to require that:
 

 [Wjhen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
 

 [[Image here]]
 

 Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.
 
 Ake,
 
 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66 (1985).
 

 In
 
 Granviel,
 
 the Fifth Circuit noted that the accused’s “ability to uncover the truth concerning his sanity is not prejudiced by a court-appointed, neutral expert.”
 
 [1]
 
 881 F.2d at 192.
 

 Texas law requires that when “the issue of the defendant’s incompetency to stand trial is raised ...,” Tex.Code Crim.Proc. Ann. art. 46.02, § 3(a), or when “notice of intention to raise the insanity defense is filed,”
 
 Id.
 
 at art. 46.03, § 3(a), “the court may, ... appoint disinterested experts experienced and qualified in mental health and mental retardation to examine the defendant ...” with regard to either competency to stand trial or sanity at the time of the offense. Tex.Code Crim.Proc.Ann. arts. 46.02 and 46.03, respectively. Each statutory provision also instructs the expert examiners to be prepared to testify regarding their examination of the accused. In
 
 Granviel,
 
 the Court found that “[t]he Texas procedure complies with the mandate of the Constitution.”
 
 Id.
 
 at 192. In denying certiorari, a majority of the Supreme Court deemed it unnecessary to disturb the lower court’s ruling. As an inter
 
 *254
 
 mediate appellate court, we are in no position to contradict the highest court of the land, and we find the Texas statutory scheme constitutionally adequate.
 

 We further find that the facts of the instant case also command that Appellant received ample expert examination and assistance. The trial court ordered examination of both Appellant’s competence to stand trial and sanity at the time of the offense. Pursuant to the statutes, the court advised the mental health facility that Appellant had been charged with a homicide which occurred on February 17, 1989. The court also enunciated the legal definition of competency to stand trial, and the order requested that Appellant be examined to determine whether or not, due to mental disease or defect, he knew his conduct was wrong. After the initial examination, Appellant was declared incompetent to stand trial. However, the director of psychiatric services at vernon State Hospital recommended that Appellant be committed to the hospital for treatment and restoration pursuant to Tex.Code Crim.Proc.Ann. art. 46.02, § 5 (Vernon 1979 and Supp. 1991).
 

 After a jury found Appellant presently incompetent but possessing the capability to attain competence, the trial court ordered Appellant committed to a mental health facility for individual treatment for 18 months. The court instructed that the Appellant’s examiners were to notify the court as soon as they were of the opinion that he had attained competency or if there was no substantial probability that competency to stand trial could be attained. Reports were submitted to the trial court on December 7, 1989 and March 12,1990, both of which stated Appellant had yet to attain competence. Subsequently, the director of psychiatric services reported on June 1, 1990, that Appellant had attained competency to stand trial. Throughout the process, numerous lengthy reports were filed by experts who examined Appellant including: Denicia Martinez, M.D.; Fini E. Heynen, Ph.D.; William Swart, D.O.; and Danny Slappey.
 

 At trial, Appellant testified on his own behalf and introduced numerous hospital records to attempt to prove his insanity at the time of the offense. Appellant detailed his youth, his military history, a previous marriage, his Christian conversion, his prolonged drug abuse and his past mental health problems, including the medications prescribed to alleviate his mental problems. He stated that while he saw “visions,” he was not “crazy.” On the day of the offense, Appellant took his medication and smoked some marihuana prior to attempting to catch up with his wife (the deceased) and her family who were driving from Eagle Pass to Pecos. Appellant testified that he was afraid that they were going to Pecos to attempt to sell an infant child belonging to him and his wife. Appellant took some more medicine and smoked some more marihuana prior to starting his own fateful trip toward Pecos. Stating that all he wanted to do was get his baby, Appellant testified that he drove for a couple of hours prior to catching up with the family and that he had heard voices that he could not overcome that told Appellant to “kill, kill.” When Appellant caught up with the family, he ran their vehicle off the road, and when the family exited the vehicle, the deceased approached Appellant with the child. Appellant stabbed her with a knife repeatedly and cut her throat prior to fleeing on foot. Appellant was apprehended approximately twenty-four hours later about a mile from the scene of the murder. On cross-examination, Appellant admitted that the effect of taking his medicine and smoking marihuana “triggered me off, ... that’s when it really, you know, it changed me.”
 

 After cross-examination of Appellant concluded, the defense rested; at which time, both the State and the court offered to allow Appellant to visit with Dr. Heynen prior to the State’s calling her as a rebuttal witness. Stating that “[w]e don’t want to put any more witnesses,” [sic] Appellant declined the invitation. Dr. Heynen, a licensed clinical psychologist, testified that she examined Appellant to ascertain both whether he was competent to stand trial and whether he was sane at the time of the
 
 *255
 
 offense. In so doing, she stated that the courts always ask for two opinions; therefore, Dr. Martinez, a psychiatrist, also evaluated Appellant’s condition. The witness stated that she reviewed previous reports on Appellant’s condition, observed Appellant extensively and administered a battery of tests to evaluate Appellant. From the information assembled, Heynen stated that on February 17, 1989, Appellant “did know the difference between right and wrong.” Continuing, Heynen testified that Appellant was neither psychotic, nor did he suffer from delusions or hear voices sufficient to cause him to be confused to the point that he would not understand what was happening or know right from wrong. After the State passed the witness, the court admonished and excused the jury for the evening. The trial court also inquired of Dr. Heynen whether she would be available to consult with Appellant’s attorney about his client’s case to which she affirmatively responded.
 

 When the trial reconvened on the following morning, Appellant cross-examined Dr. Heynen. During the examination, Appellant obtained a hearing outside the presence of the jury, and Appellant’s counsel told the trial court that “the defendant has had an opportunity to talk with the doctor who is on the stand and to review the records that we have just talked about in the direct testimony.” Immediately thereafter, Appellant renewed his pretrial motions to obtain “expert assistance in analyzing that material and preparing for cross-examination....” The court inquired whether Appellant needed additional time to talk to Dr. Heynen to which Appellant replied in the negative. Consequently, the trial court again overruled the motion. Appellant continued to argue to no avail that his need for an additional expert was to be able to understand the extensive medical records in order to effectively cross-examine Dr. Heynen and point out where she was wrong.
 

 As cross-examination continued, Appellant did effectively elicit testimony from the witness that Dr. Martinez diagnosed Appellant as suffering from chronic undifferentiated schizophrenia, organic brain syndrome and extreme psychosocial stres-sors. She also agreed that Appellant did in fact suffer from diffuse organic brain damage. Heynen admitted that she and Dr. Martinez disagreed about whether Appellant had schizophrenia. Appellant also produced evidence that prior to the offense, another psychiatrist employed at the San Antonio State Hospital reported that “he sees the capacity of Mr. DeFreece to de-compensate and to be a danger to himself and others because of the stress.” Heynen stated that Appellant exaggerated his problems due to a character disorder and his drug dependence. In qualifying why she believed Appellant did not suffer from auditory or visual hallucinations to the extent that he would be compelled to carry them out, Heynen stated that most of Appellant’s prior admissions to mental health facilities resulted from his illicit drug abuse and that any hallucinations were likely organically induced by such drug use. However, she also stated that a person who had been forced to kill women and children in battle such as in a Vietnamese village could later suffer from posttraumatic stress syndrome possibly causing a reoccurrence.
 

 As a result, we find that Appellant’s counsel did an admirable job of cross-examining Dr. Heynen and introducing evidence before the jury from which it could decide whether or not Appellant knew the difference between right or wrong on the date of the offense. As was their prerogative, the jury determined from the evidence both pro and con that Appellant had not established by a preponderance of evidence that he was not legally sane when he killed his wife. Having found that: (1) the Texas statute adequately provides for indigent psychiatric assistance; (2) the trial court did appoint disinterested experts as per the statute; and (3) Appellant’s trial counsel effectively impeached the testifying expert, we cannot agree that the trial court erred in failing to appoint an additional expert to assist Appellant.
 
 See generally, Meraz v. State,
 
 714 S.W.2d 108, 115-16 (Tex.App.—El Paso 1986),
 
 aff'd,
 
 785 S.W.2d 146 (Tex.1990);
 
 Granviel,
 
 881 F.2d at 192; and
 

 
 *256
 

 Henderson v. Dugger,
 
 925 F.2d 1309, 1315-16 (11th Cir.1991).
 

 Furthermore, the record does not indicate any reason why Dr. Martinez was neither requested nor subpoenaed to testify. We are unaware of any prohibitive reason which would have prevented Appellant from simply issuing his own subpoena to compel Martinez’s presence along with Heynen’s.
 
 See
 
 Tex.Code Crim.Proc.Ann. art. 24.03 (Vernon 1989). This would have enabled Appellant to put on direct evidence from Martinez’s diagnosis which appears to contradict Heynen’s. While presentation of such evidence would have likely bolstered Appellant’s position, accomplishing this feat did not require the appointment of an additional expert since Martinez was already one of those previously appointed.
 

 We find that the trial court properly appointed the disinterested experts and admittedly allowed sufficient time for Appellant to interview the one expert subpoenaed to testify. During the time provided, Appellant could have inquired into any matter of medical importance which he did not understand. It is firmly established that Appellant is not entitled to “appointment of an expert who would reach a conclusion favorable to the defendant....”
 
 Martin v. Wainwright,
 
 770 F.2d 918, 935 (11th Cir.1985), ce
 
 rt. denied,
 
 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986);
 
 Granviel,
 
 881 F.2d at 192.
 
 [2]
 
 While Appellant claims that he is only seeking appointment of an adversarial expert, he fails to recognize that the trial court had done so, and one of the court’s disinterested experts did in fact possess opinions supportive of his position. However, nothing in the record affirmatively shows Appellant issued or requested issuance of process to compel attendance of Dr. Martinez who had been previously instructed by the court that the evaluation of Appellant might be the subject of testimony in court. Consequently, the trial court did not err in overruling Appellant’s motion for appointment of an additional expert.
 

 As a result, we conclude that Appellant was not deprived of either due process, equal protection, effective assistance of counsel or compulsory process of witnesses.
 
 [3]
 
 Accordingly, we overrule each of Appellant’s points of error and affirm the judgment of the trial court.
 

 [1]
 

 . The Court also noted that "[t]he state is not required to permit defendants to shop around for a favorable expert." 881 F.2d at 192. Likewise, the Supreme Court noted that indigent defendants have no "constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.”
 
 Ake,
 
 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66 (1985).
 
 See also Day v. State,
 
 704 S.W.2d 438, 440 (Tex.App.—Amarillo 1986, no pet.).
 

 [2]
 

 . See also Day v. State,
 
 704 S.W.2d 438, 440 (Tex.App.—Amarillo 1986, no pet.) (trial court properly denied accused opportunity to “shop for another opinion” after previously appointing disinterested expert).
 

 [3]
 

 . We recognize the Court of Criminal Appeals mandate that allegations of state constitutional violations are to be analyzed independent of federal constitutional issues.
 
 Heitman v. State,
 
 815 S.W.2d 681, 690 (Tex.Crim.App.1991). However, Appellant has not cited any specific precedential authority addressing his individual points of error which would require us to apply a different or higher standard in reviewing those points. Consequently, we find no compelling reason to deviate from the standard of review expressed by the Supreme Court in
 
 Ake,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).
 
 See also generally, Jordan v. State,
 
 707 S.W.2d 641, 645 (Tex.Crim.App.1986) (failure to order medical examination did not deny accused due process or effective representation).