

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00126-CR

FRITZ KEITH PETERS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 441st District Court
Midland County, Texas
Trial Court No. CR48226, Honorable Jeffrey Todd Robnett, Presiding

February 26, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Fritz Keith Peters, appellant, appeals his conviction for forgery. Through two issues, he contends the evidence was insufficient to support his conviction, and the trial court abused its discretion in allowing a defense expert to testify for the State. We affirm.[1]

---

[1] Because this appeal was transferred from the Eleventh Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

*Issue One – Sufficiency of the Evidence*

Appellant initially contends that "[w]hile the evidence in this case shows the complainant did not write the checks nor authorized anyone to do so, the evidence does not establish Appellant as the perpetrator of that fraud." This purportedly is so because the State presented no evidence that he 1) was the "person who established this bank account so he could commit the elaborate forgery scheme," 2) was the person who took the photographs of the checks to make the mobile deposit, 3) was the individual who deposited the money into the bank account, 4) touched the checks deposited into the account, and 5) was the individual who withdrew the funds from the account. We overrule the issue.

We begin our analysis by mentioning several principles. First, the applicable standard of review is that discussed in *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), *Merritt v. State*, 368 S.W.3d 516 (Tex. Crim. App. 2012), and *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Second, not only is direct and circumstantial evidence equally probative, but also circumstantial evidence alone may be ample to prove guilt if its cumulative force is enough to support the conviction. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, application of the foregoing standard requires us to focus on the evidence presented, as opposed to the evidence which could have been presented but was not. *Merritt*, 368 S.W.3d at 526.

Here, the State accused appellant of "pass[ing] and transfer[ring] a writing that had been MADE AND ALTERED so that the said writing purported to be the act of another who did not authorize that act, to-wit: the act of RAJESH GUTTA AND MIDESSA ORAL

2

AND FACIAL SURGERY, and . . . pass[ing] and transferr[ing] the said writing with the knowledge that said writing was forged".  The accusation implicated § 32.21(b) of the Texas Penal Code, which states that a person commits an offense if "he forges a writing with intent to defraud or harm another."  TEX. PENAL CODE ANN. § 32.21(b) (West Supp. 2019).

One can "forge" a writing in several ways, per the statute.  The manner pertinent here is that where the accused allegedly "issue[s], transfer[s], register[s] the transfer of, pass[es], publish[es], or otherwise utter[s] a writing that is" altered, made, completed, executed, or authenticated so that it purports to be an act of another who did not authorize the act.  *Id.* § 32.21(a)(1)(A), (B).  As explained by the State to the jury, appellant "got these checks that he knew were fake, and he took money that didn't belong to him when he deposited these checks into his account.  So that's where the crime is."

The checks about which the State spoke were six in number for $150 each.  They were written on the account of "Gutta PA" of Midland, Texas, dated March 1, 2016, and payable to "Fritz K. Peters."  Each was deposited on the same day into a checking account recently opened with BBVA Compass Bank in Athens, Alabama.  The deposits were made via mobile banking, that is, by sending the check through a telephone app to the bank.

Additionally, a bank employee testified that appellant "owned" the account.  Other evidence was proffered to support this proposition.  It consisted of testimony that the bank required photo I.D. from a person opening the account to verify the identity of the person opening it.  So too was there evidence indicating the signature on the signature card executed when the account was open was similar to that of appellant.  The investigator

3

assigned to the case also opined that appellant owned the account, which opinion was based upon her "training and experience" and consideration of the signature card and account identifiers.

The record also illustrates that the account was opened with an initial deposit of only $25. No other deposits were made until the deposit of the aforementioned six checks on March 1st. Three days later, a check in the amount of $850 payable to the order of "cash" was drawn against the account. Appellant's handwritten name appeared in the signature line on the front of the instrument and the signature line on the back where a payee normally endorses the check for negotiation. According to a bank employee with 12 years of experience in the industry, the signatures on the $850 check and signature card were "substantially similar enough" to warrant payment of the check.

There appeared other evidence of record. For instance, Dr. Gutta of "Gutta PA" practiced in Midland, Texas. And, he testified and denied that 1) he knew appellant, 2) appellant was a patient of his, 3) the six $150 checks payable to appellant were his (Gutta's), 4) the signatures on each check were his, and 5) the appearance of the checks was similar to that of the checks he used. Another witness testified that mobile deposits into a third-person's account could not be accidental because the manner in which they were made and the information which had to be known to complete the deposit. Finally, a bank employee also testified that appellant never reported to the bank any supposed misconduct or fraudulent activity regarding the account.

In short, the jury had before it evidence from which it could reasonably infer that appellant opened a checking account in Alabama with a $25 deposit but nevertheless withdrew $850 from it. The withdrawal occurred soon after six forged checks purportedly

sent by someone from Texas with whom he had no relationship were also deposited. It may have been nice to have direct testimony establishing that appellant opened the BBVA account, deposited the six forged checks into it, and then withdrew $850. Yet, much can reasonably be inferred from the circumstantial evidence of appellant taking $850 from an account in which he only made one legitimate deposit of $25 and remaining silent thereafter. *See Munoz v. State*, No. 11-13-00139-CR, 2015 Tex. App. LEXIS 6643, at *10 (Tex. App.—Eastland June 30, 2015, pet. ref'd) (mem. op., not designated for publication) (noting that a defendant's pre-arrest, pre-*Miranda* silence may be considered as substantive evidence of guilt). The circumstantial evidence here permitted the fact-finder to reasonably infer that appellant forged a writing with intent to defraud or harm another by passing a writing purporting to be an act of another who did not authorize the act.

*Issue Two – Allowing Defense Expert to testify for the State*

In his second issue, appellant contends the trial court abused its discretion in permitting the State to request a defense expert to conduct a handwriting analysis of his signature. That purportedly converted a "defense expert" appointed to help him into an "independent expert." In the expert being so converted, he allegedly was denied his constitutional right "to his or her own expert" as opposed to "a neutral expert to assist both parties." We overrule the issue.

Simply put, appellant argues that an appointed defense expert cannot be used by the State for purposes of garnering evidence beneficial to the State's case. In so contending, he ignores Texas Rule of Evidence 611(b). It permits a litigant to cross-

5

examine a witness "on any relevant matter, including credibility."  TEX. R. EVID. 611(b).

Instead, he would have us read various other authorities as imposing such a restriction.

The authorities in question are *McWilliams v. Dunn,* 582 U.S. __, __, 137 S. Ct. 1790, 1800, 198 L. Ed. 2d 341 (2017), *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093, 84 L. Ed. 2d 53 (1985),  and *Ex parte Jimenez*, 364 S.W.3d 866, 877 (Tex. Crim. App. 2012).  They recognize that due process sometimes calls for the appointment of an expert to assist indigents when defending against criminal accusations.  That is, they recognize that, at times, an indigent must be afforded access to at least one expert "who, even if he cannot or will not testify to the defense's theory of the case, is 'available to consult with counsel, to interpret records, to prepare counsel to cross-examine State's witnesses, and generally to help present appellant's defense in the best light.'"  *Ex parte Jimenez*, 364 S.W.3d at 877 (quoting *De Freece v. State*, 848 S.W.2d 150, 161 n.7 (Tex. Crim. App. 1993)).  However, being entitled to an expert does not mean the expert is insulated from cross-examination should he testify.  Nor do *Jimenez*, *Ake,* or *McWilliams* so hold.  Nor did any of those authorities hold that recognizing the right to expert assistance requires their insulation from applicable Rules of Evidence should the expert testify.

In sum, we reject appellant's invitation to read *McWilliams*, *Ake*, *Jimenez,* and like authority as creating a rule akin to: "this expert is mine and the State cannot ask him relevant questions on cross-examination which may help the State."  If the rules of evidence otherwise allowed the State to pursue the line of questioning at issue, the

6

aforementioned authorities alone did not bar it.  And, appellant did not argue that the line of questioning pursued by the State here somehow transgressed a rule of evidence.[2]

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

Do not publish.

---

[2] We do note the language in *McWilliams* about the appointed expert being "independent from the prosecution to effectively 'assist in evaluation, preparation, and presentation of the defense.'" *McWilliams,* 582 U.S. at ___, 137 S. Ct. at 1793 (quoting *Ake*, 470 U.S. at 83).  Nevertheless, appellant failed to explain how, under the circumstances at bar, the appointed expert was no longer independent from the prosecution when asked to compare various signatures of appellant and assess their similarity.  The question solicited evidence relevant to appellant's guilt or innocence, and, therefore, fell within the scope of Rule 611(b).  And, merely because the expert's response may have been somewhat helpful to the State, does not alone establish the purported lack of independence.  If the contrary were true, then impeaching an appointed expert would become prohibited given the likelihood that such often benefits the prosecution.