

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-11-00486-CR

KENNETH OLAF LUNDGREN                                              APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Kenneth Olaf Lundgren appeals his convictions on six counts of aggravated assault on a public servant. *See* Tex. Penal Code Ann. § 22.02 (West 2011). In three points, appellant contends (1) that the evidence is insufficient to support convictions for aggravated assault on a public servant, (2) that he was denied a meaningful opportunity to present an insanity defense, and

---

[1]*See* Tex. R. App. P. 47.4.

(3) that the trial court erred in admitting appellant's medical records into evidence in violation of the Confrontation Clause. We affirm.

**Background**

On the evening of October 31, 2010, appellant was at his home in Hood County with his wife and stepson. Appellant had taken several prescribed medications for back pain and was drinking alcohol. At some point in the evening, appellant picked up a gun and began acting strangely. Appellant's wife became concerned that he was going to hurt himself, so she had her son call the police. Several uniformed Hood County Sheriff's deputies soon arrived and gathered at the gate to appellant's property. Shortly after they arrived, appellant's wife and stepson came out of the home and reported that appellant was still inside. Appellant's wife told police that she was concerned that appellant was going to come out of the house and come after her. The deputies set up a perimeter around the house and waited for a negotiator and SWAT team to arrive.

Before the negotiator or SWAT team could arrive, appellant came out of the home and began walking toward the deputies at the front gate. The deputies asked him to show his hands, and appellant made an obscene gesture towards them with both hands. When he did so, deputies noticed that appellant had a pistol tucked into the waistband of his pants. They ordered appellant to put the weapon down. Appellant instead removed the pistol from his waistband and pointed it at the deputies while continuing to walk toward them. During the

2

encounter, appellant pointed the pistol at each of the deputies. Ignoring repeated demands from deputies to drop the pistol, appellant turned around and began walking back toward the house. The deputies followed behind appellant and were able to overtake him just before he reached the house. Deputies tackled appellant, wrestled the pistol away from him, and placed him under arrest for aggravated assault. Appellant was transported to Lake Granbury Medical Center, where he was evaluated before being taken to jail.

Appellant was indicted on six counts of aggravated assault on a public servant. Before trial, he filed a Notice of Intent to Raise Insanity Defense requesting that the trial court appoint a disinterested mental health expert to evaluate him. The trial court granted the motion and appointed Dr. Barry Norman to examine appellant. Dr. Norman concluded from his examination of appellant that he "DID NOT have a mental infirmity . . . that caused him to lose his ability to understand or reason accurately at the time of the crime" and that appellant "did know that his behavior with which he is charged was wrong."

Appellant also filed a motion requesting a court-appointed expert to aid in the preparation of his insanity defense. The trial court denied that motion.

At trial, the jury convicted appellant of all six counts of aggravated assault on a public servant, and the trial court sentenced appellant to twenty years' confinement on each count, to be served concurrently.

**Public Official in Lawful Discharge of Official Duties**

In his first point, appellant contends that the evidence is insufficient to sustain his convictions for aggravated assault on a public servant. Appellant argues that the State did not prove that the six deputies whom appellant is charged with assaulting were acting in lawful discharge of their duties at the time of the assault, a required element of a charge of aggravated assault upon a public servant. *See id.* § 22.02(b)(2)(B). Appellant argues that for these deputies to have been in lawful discharge of their official duties in satisfaction of this element of the offense, they were required to follow crisis intervention techniques learned in a legally mandated training class. Appellant claims that the deputies here did not follow these techniques; thus, they were not in lawful discharge of their duties.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Aggravated assault of a public servant, as alleged in this case, requires proof of assault with the use or exhibition of a deadly weapon that is committed "against a person the actor knows is a public servant *while the public servant is lawfully discharging an official duty.*" Tex. Penal Code Ann. § 22.02(a)(2),

4

(b)(2)(B) (emphasis added). In this context, "lawful discharge" of official duties means that the public servant is acting within his capacity as a police officer. *Hall v. State*, 158 S.W.3d 470, 474 (Tex. Crim. App. 2005). An officer is not required to have "crossed every 't' or dotted every 'i' of every duty that relates to his public office." *Id.* Rather, lawful discharge of official duties means only that the officer is not criminally or tortiously abusing his office as a public servant. *Id.* at 474–75; *Bell v. State*, 233 S.W.3d 583, 586 (Tex. App.—Waco 2007, pet. ref'd, untimely filed). In making this determination, courts look at the details of the encounter, such as whether the police officer was in uniform, on duty, and on regular patrol at the time of the assault. *Hall*, 158 S.W.3d at 474.

Appellant argues that the deputies who went to his house were required to follow certain crisis intervention techniques to be considered in lawful discharge of their duties as peace officers. Appellant claims that section 1701.253 of the Texas Occupations Code creates a duty under which police officers are required to follow crisis management techniques learned in state-mandated training classes. *See* Tex. Occ. Code Ann. § 1701.253(j) (West 2012). According to appellant, the deputies here should have known from their crisis intervention training that because he was mentally ill, they should have used a "nicer/gentler touch" when dealing with him. Appellant claims that by shouting at, confronting, and tackling him, the deputies violated their duty to be nonconfrontational.

Section 1701.253(j) of the Texas Occupations Code reads as follows:

5

> As part of the minimum curriculum requirements, the commission shall require an officer to complete a statewide education and training program on de-escalation and crisis intervention techniques to facilitate interaction with persons with mental impairments. An officer shall complete the program not later than the second anniversary of the date the officer is licensed under this chapter or the date the officer applies for an intermediate proficiency certificate, whichever date is earlier. An officer may not satisfy the requirements of this section or Section 1701.402(g) by taking an online course on de-escalation and crisis intervention techniques to facilitate interaction with persons with mental impairments.

*Id.* The only requirement pertaining to police officers in this statute is that they complete a training program on de-escalation and crisis intervention techniques. No language purports to create a duty to follow those techniques in any given situation. Moreover, trial testimony shows, and appellant concedes, that each deputy at whom he pointed the pistol had completed the required training.

Although appellant claims that *Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 1606 (2011), supports the proposition that officers are required to follow their crisis intervention training to be considered in lawful discharge of their official duties, the court in *Mays* made no such holding. In *Mays*, the appellant challenged his conviction for capital murder in the shooting of a sheriff's deputy. *Id.* at 374–75. The deputies in that case went to the appellant's home in response to a possible domestic violence call. *Id.* at 373. When deputies arrived at the home, they spoke with the appellant, who appeared to be acting normally. *Id.* However, when the deputies attempted to arrest the appellant, he fled toward his home. *Id.* at 373–74. The deputies attempted to

6

prevent the appellant from entering his home, where they knew that he had weapons, but they ultimately failed. *Id.* at 374. The appellant retrieved a rifle from the home, and he shot and killed two deputies while taking cover inside the home. *Id.* at 374–75.

The appellant was charged with capital murder on the basis that he had killed a public servant in the lawful discharge of his duty. *See* Tex. Penal Code Ann. § 19.03 (West Supp. 2012). The appellant argued that the phrase "lawful discharge of public duty" was unconstitutionally vague. *Mays*, 318 S.W.3d at 388. The court held that the phrase was not vague but had an established definition, which was that "as long as the officer was acting within his capacity as a peace officer, he was acting within the lawful discharge of his official duties." *Id.* The court noted that although the appellant may have felt that the officers should not have responded at all to the 911 call that precipitated their presence at his home or should not have tried to arrest him, the officers were still in lawful discharge of their duties. *Id.* at 389. The court's only mention of crisis intervention training was in its recitation of the facts, stating that an instructor for the course on crisis intervention testified at trial that such training "goes out the window" when weapons are involved. *Id.* at 375. The statement had no bearing on the court's discussion of whether the phrase "lawful discharge of a public duty" is unconstitutionally vague. *See id.* at 388–89.

Outside of alleging that the deputies failed to properly execute their crisis intervention training, appellant does not otherwise dispute that the deputies were

7

in lawful discharge of their duties, nor does he challenge the sufficiency of the evidence to prove aggravated assault. Testimony shows that all of the deputies at appellant's house had gone there as part of their duties as peace officers, were in uniform, and had arrived in marked patrol cars. Appellant approached them and pointed the pistol at each of them, despite being ordered to put the weapon down. Appellant does not challenge that the deputies were there in furtherance of their duties, only that the way in which they discharged those duties was improper. However, appellant points to no evidence, and we have found none, showing that the deputies criminally or tortiously abused their offices during the encounter.

Thus, viewing the evidence in the light most favorable to the verdict, we conclude and hold that a rational factfinder could have found beyond a reasonable doubt that all six officers were lawfully discharging an official duty and that the evidence is sufficient to support appellant's convictions on all six counts. We overrule appellant's first point.

### Insanity Defense

In his second point, appellant contends that he was deprived of "any meaningful opportunity to present his insanity defense." Specifically, appellant argues that Texas law creates a due process right for mentally ill criminal defendants to be immediately evaluated upon arrest. Appellant also argues that the trial court erred in denying his motion for the appointment of an expert to aid in his insanity defense.

8

**Due Process Right to Immediate Mental Health Examination**

Appellant argues that section 573.001 of the Texas Health and Safety Code required the officers who arrested appellant to immediately take him to an inpatient mental health facility instead of a regular hospital or the county jail. According to appellant, this failure to do so violated his due process rights by depriving him of the ability to establish his mental state at or near the time of the alleged offense.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g). Almost all error, even constitutional error, is forfeited if the appellant fails to object at trial. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1105 (2009). Preservation of error is a systemic requirement that this court should review on its own motion. *Wilson*,

311 S.W.3d at 473–74; *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).

Appellant did not raise this argument in the trial court, and it does not fall within the categories of absolute, systemic, or waivable-only error for which no objection is required. *See Saldano v. State*, 70 S.W.3d 873, 888–89 (Tex. Crim. App. 2002); *see also Long v. State*, 130 S.W.3d 419, 429–30 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding argument based on requirement of Health and Safety Code must be preserved at trial). Because appellant failed to properly preserve his denial of due process claim, we overrule this part of appellant's second point.

**Failure to Appoint an Expert for the Defense**

Appellant also argues that the trial court erred in denying his motion to appoint a mental health expert to aid him in presenting his insanity defense. Appellant claims that he properly demonstrated that his sanity was likely to be a significant factor at trial and thus he had a due process right to have a court-appointed expert examine him and testify on his behalf. Appellant contends that the trial court's failure to provide an expert denied him his due process rights. *See Ake v. Oklahoma*, 470 U.S. 68, 83–87, 105 S. Ct. 1087, 1096–98 (1985).

Due process requires access to the raw materials integral to the building of an effective defense—including the appointment of an expert for indigent defendants. *Griffith v. State*, 983 S.W.2d 282, 286–87 (Tex. Crim. App. 1998) (citing *Ake*, 470 U.S. at 77, 105 S. Ct. at 1093), *cert. denied*, 528 U.S. 826

10

(1999). But in implementing the right to receive an expert, the defendant has the burden to make a sufficient threshold showing of the need for expert assistance. *Id.* To carry his burden when requesting expert assistance on the issue of sanity, the defendant must show that sanity is likely to be a significant factor at trial. *Ake*, 470 U.S. at 82–83, 105 S. Ct. at 1096. The defendant's claim must be based on more than undeveloped assertions that expert assistance would be beneficial. *Rey v. State*, 897 S.W.2d 333, 339 (Tex. Crim. App. 1995). Generally, the trial court looks for the defendant to support his motion for an expert with affidavits or other evidence showing his need for expert assistance, as well as an explanation of the defensive theory and why the expert assistance would be helpful in establishing that theory. *Id.* at 341. When the court appoints a disinterested expert to examine the defendant to determine whether sanity will be a significant factor at trial and that expert determines that sanity will not be a significant factor, then the right to an appointed expert is not triggered. *De Freece v. State*, 848 S.W.2d 150, 159 (Tex. Crim. App.), *cert. denied*, 510 U.S. 905 (1993). We review a trial court's ruling on a motion to obtain a court-appointed expert under an abuse of discretion standard. *Griffith*, 983 S.W.2d at 287.

In this case, the trial court appointed a disinterested expert, Dr. Norman, to evaluate appellant. Dr. Norman examined appellant and submitted his report to the trial court. In his report, Dr. Norman discussed appellant's medical and psychological history, as well as his mental state at the time of the examination,

11

and concluded that appellant was not criminally insane. Dr. Norman noted that appellant was likely under the influence of drugs and alcohol at the time of the offense but also stated that voluntary intoxication cannot be a basis for criminal insanity. The doctor also noted that although appellant may have been suffering from depression at the time of the offense, he was functioning normally, had the capacity to understand what he was doing, and knew that his behavior was wrong.

In appellant's Motion for Appointment of Expert Assistance, he argued that he was entitled to an expert other than Dr. Norman to assist in presenting his insanity defense. Appellant stated in his motion that "[i]t is believed that all actions which substantiate the charge were the result of a psychotic episode or some other mental aberration which rendered [him] insane." Appellant argued that the appointment of an expert for the defense was both "necessary" and "critical" to the preparation of his defense. Appellant did not support his motion with any affidavits, testimony, or exhibits.

Because the disinterested expert concluded that appellant's sanity at the time of the offense would not be a significant factor and because appellant brought forward no evidence other than conclusory assertions in support of his motion, the trial court could have reasonably found that appellant did not carry his burden in showing that his sanity would be a significant factor at trial. *See Rey*, 897 S.W.2d at 339; *De Freece*, 848 S.W.2d at 159. Therefore, we hold that

the trial court did not abuse its discretion in denying appellant's motion for an appointed expert.

We overrule the remainder of appellant's second point.

**Confrontation Clause Objection to Medical Records**

In his third point, appellant contends that the trial court erred in admitting medical records over his objection in violation of the Confrontation Clause. Appellant argues that statements in the medical records pertaining to his mental and physical state shortly after the offense are testimonial; thus, he has a constitutional right to confront the medical professionals who made those statements.

The State argues that appellant did not properly preserve this point for appeal because his objection at trial was not sufficiently specific. Alternatively, the State argues that the medical records are not testimonial, or if they are testimonial, appellant was not harmed by their admission into evidence.

At trial, the State offered into evidence medical records from appellant's visit to Lake Granbury Medical Center, where deputies took him immediately after his arrest. The State offered those records through Dr. Norman, who was testifying as the State's psychological expert. While conceding that he had no basis for a hearsay objection because the records were introduced with a business records affidavit, appellant objected as follows:

> [Defense Counsel]: . . . However, I have an objection that's under *Crawford* in that there are medical conclusions that are made herein by a medical professional who would not be here, we cannot

13

confront or determine why and under what circumstances he made those conclusions. So, therefore, we're going to object to it on *Crawford* grounds, Your Honor.

[Trial Court]: That's overruled, and State's Exhibit 6 is admitted.

On appeal, appellant specifically points to three statements in the medical records that he argues violate the Confrontation Clause. Those statements are as follows:

ETOH 223[2]

. . . .

Psychosocial: Patient demonstrates normal behavior appropriate for age and situation. The patient has adequate support systems available, is able to ambulate independently, and can perform all activities of daily living without assistance.

. . . .

Neurologic: Alert, oriented to person, place and time. Glascow Coma Score 15. Moves all four extremities equally with equal strength. Patient denies numbness or tingling. Pupils are brisk, equal and reactive to light bilaterally. Patient is able to speak clearly. Zero deficits noted.

Appellant argues that these statements violate the Confrontation Clause because scientific testing documents can be admitted as business records only when the person who conducted the tests is available for cross-examination. Appellant argues that the Supreme Court's holdings in *Melendez-Diaz* and *Bullcoming* support his position. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713–14

---

[2]A later page in the records notes that appellant's ethanol level was 223 and "H," or high.

(2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–311, 129 S. Ct. 2527, 2531–32 (2009).

As discussed above, to preserve a complaint for our review, a party must have made a timely and specific objection at trial. Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92. "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). When part of the offered evidence is admissible and part is not, the objecting party must specifically point out which part is inadmissible. *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Human v. State*, 749 S.W.2d 832, 838 (Tex. Crim. App. 1988) (op. on reh'g).

In this case, appellant objected to a twenty-page medical record that contains many measurements, notations, observations, and conclusions made by medical professionals. Appellant's general objection to the admission of the entire document was that it contained medical conclusions in violation of his Confrontation Clause rights. Although on appeal he has pointed out the specific medical conclusions he believes are inadmissible, he did not do so for the trial court. *See Hernandez v. State*, 599 S.W.2d 617, 617 (Tex. Crim. App. [Panel Op.] 1980) (op. on reh'g) (holding that objection in trial court must identify the particular item objected to). The trial court is not obligated to search through the document and identify all of the inadmissible statements on its own. *See*

15

*Whitaker*, 286 S.W.3d at 369. Therefore, appellant's objection was insufficient to preserve this complaint for appeal. *Id.*

We overrule appellant's third point.

## Conclusion

Having overruled appellant's three points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 30, 2012