02-11-486-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00486-CR

 

 


 
 
 Kenneth Olaf Lundgren
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 355th
District Court OF Hood COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
Kenneth Olaf Lundgren appeals his convictions on six counts of aggravated
assault on a public servant.  See Tex. Penal Code Ann. § 22.02 (West
2011).  In three points, appellant contends (1) that the evidence is
insufficient to support convictions for aggravated assault on a public servant,
(2) that he was denied a meaningful opportunity to present an insanity defense,
and (3) that the trial court erred in admitting appellant’s medical records
into evidence in violation of the Confrontation Clause.  We affirm.

Background

          On
the evening of October 31, 2010, appellant was at his home in Hood County with
his wife and stepson.  Appellant had taken several prescribed medications for
back pain and was drinking alcohol.  At some point in the evening, appellant picked
up a gun and began acting strangely.  Appellant’s wife became concerned that he
was going to hurt himself, so she had her son call the police.  Several uniformed
Hood County Sheriff’s deputies soon arrived and gathered at the gate to appellant’s
property.  Shortly after they arrived, appellant’s wife and stepson came out of
the home and reported that appellant was still inside.  Appellant’s wife told
police that she was concerned that appellant was going to come out of the house
and come after her.  The deputies set up a perimeter around the house and
waited for a negotiator and SWAT team to arrive.

Before
the negotiator or SWAT team could arrive, appellant came out of the home and
began walking toward the deputies at the front gate.  The deputies asked him to
show his hands, and appellant made an obscene gesture towards them with both
hands.  When he did so, deputies noticed that appellant had a pistol tucked
into the waistband of his pants.  They ordered appellant to put the weapon
down.  Appellant instead removed the pistol from his waistband and pointed it
at the deputies while continuing to walk toward them.  During the encounter,
appellant pointed the pistol at each of the deputies.  Ignoring repeated
demands from deputies to drop the pistol, appellant turned around and began
walking back toward the house.  The deputies followed behind appellant and were
able to overtake him just before he reached the house.  Deputies tackled appellant,
wrestled the pistol away from him, and placed him under arrest for aggravated
assault.  Appellant was transported to Lake Granbury Medical Center, where he
was evaluated before being taken to jail.

Appellant
was indicted on six counts of aggravated assault on a public servant.  Before
trial, he filed a Notice of Intent to Raise Insanity Defense requesting that
the trial court appoint a disinterested mental health expert to evaluate him.  The
trial court granted the motion and appointed Dr. Barry Norman to examine
appellant.  Dr. Norman concluded from his examination of appellant that he “DID
NOT have a mental infirmity . . . that caused him to lose his ability to
understand or reason accurately at the time of the crime” and that appellant “did
know that his behavior with which he is charged was wrong.”

Appellant
also filed a motion requesting a court-appointed expert to aid in the
preparation of his insanity defense.  The trial court denied that motion.

At
trial, the jury convicted appellant of all six counts of aggravated assault on
a public servant, and the trial court sentenced appellant to twenty years’ confinement
on each count, to be served concurrently.

Public Official in Lawful Discharge of
Official Duties

In his first point, appellant contends that
the evidence is insufficient to sustain his convictions for aggravated assault
on a public servant.  Appellant argues that the State did not prove that the six
deputies whom appellant is charged with assaulting were acting in lawful
discharge of their duties at the time of the assault, a required element of a
charge of aggravated assault upon a public servant.  See id. §
22.02(b)(2)(B).  Appellant argues that for these deputies to have been in
lawful discharge of their official duties in satisfaction of this element of
the offense, they were required to follow crisis intervention techniques learned
in a legally mandated training class.  Appellant claims that the deputies here did
not follow these techniques; thus, they were not in lawful discharge of their
duties.

In our
due-process review of the sufficiency of the evidence to support a conviction,
we view all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v. State, 330
S.W.3d 633, 638 (Tex. Crim. App. 2010).

Aggravated
assault of a public servant, as alleged in this case, requires proof of assault
with the use or exhibition of a deadly weapon that is committed “against a
person the actor knows is a public servant while the public servant is
lawfully discharging an official duty.”  Tex. Penal Code Ann. § 22.02(a)(2), (b)(2)(B)
(emphasis added).  In this context, “lawful discharge” of official duties means
that the public servant is acting within his capacity as a police officer.  Hall
v. State, 158 S.W.3d 470, 474 (Tex. Crim. App. 2005).  An officer is not
required to have “crossed every ‘t’ or dotted every ‘i’ of every duty that
relates to his public office.”  Id.  Rather, lawful discharge of
official duties means only that the officer is not criminally or tortiously
abusing his office as a public servant.  Id. at 474–75; Bell v. State,
233 S.W.3d 583, 586 (Tex. App.—Waco 2007, pet. ref’d, untimely filed).  In making
this determination, courts look at the details of the encounter, such as
whether the police officer was in uniform, on duty, and on regular patrol at
the time of the assault.  Hall, 158 S.W.3d at 474.

          Appellant
argues that the deputies who went to his house were required to follow certain
crisis intervention techniques to be considered in lawful discharge of their
duties as peace officers.  Appellant claims that section 1701.253 of the Texas
Occupations Code creates a duty under which police officers are required to
follow crisis management techniques learned in state-mandated training classes.
 See Tex. Occ. Code Ann. § 1701.253(j) (West 2012).  According
to appellant, the deputies here should have known from their crisis
intervention training that because he was mentally ill, they should have used a
“nicer/gentler touch” when dealing with him.  Appellant claims that by shouting
at, confronting, and tackling him, the deputies violated their duty to be nonconfrontational.

          Section
1701.253(j) of the Texas Occupations Code reads as follows:

As part of the
minimum curriculum requirements, the commission shall require an officer to
complete a statewide education and training program on de-escalation and crisis
intervention techniques to facilitate interaction with persons with mental
impairments.  An officer shall complete the program not later than the second
anniversary of the date the officer is licensed under this chapter or the date
the officer applies for an intermediate proficiency certificate, whichever date
is earlier.  An officer may not satisfy the requirements of this section or Section
1701.402(g) by taking an online course on de-escalation and crisis intervention
techniques to facilitate interaction with persons with mental impairments.

 

Id.  The
only requirement pertaining to police officers in this statute is that they
complete a training program on de-escalation and crisis intervention
techniques.  No language purports to create a duty to follow those techniques
in any given situation.  Moreover, trial testimony shows, and appellant
concedes, that each deputy at whom he pointed the pistol had completed the
required training.

Although appellant claims that Mays v. State, 318
S.W.3d 368 (Tex. Crim. App. 2010), cert. denied, 131 S. Ct. 1606 (2011),
supports the proposition that officers are required to follow their crisis
intervention training to be considered in lawful discharge of their official
duties, the court in Mays made no such holding.  In Mays, the
appellant challenged his conviction for capital murder in the shooting of a
sheriff’s deputy.  Id. at 374–75.  The deputies in that case went to the
appellant’s home in response to a possible domestic violence call.  Id. at
373.  When deputies arrived at the home, they spoke with the appellant, who appeared
to be acting normally.  Id.  However, when the deputies attempted to
arrest the appellant, he fled toward his home.  Id. at 373–74.  The
deputies attempted to prevent the appellant from entering his home, where they
knew that he had weapons, but they ultimately failed.  Id. at 374.  The
appellant retrieved a rifle from the home, and he shot and killed two deputies
while taking cover inside the home.  Id. at 374–75.

The appellant was charged with capital murder on the
basis that he had killed a public servant in the lawful discharge of his duty.  See Tex.
Penal Code Ann. § 19.03 (West Supp. 2012).  The
appellant argued that the phrase “lawful discharge of public duty” was
unconstitutionally vague.  Mays, 318 S.W.3d at 388.  The court held that
the phrase was not vague but had an established definition, which was that “as
long as the officer was acting within his capacity as a peace officer, he was
acting within the lawful discharge of his official duties.”  Id.  The
court noted that although the appellant may have felt that the officers should
not have responded at all to the 911 call that precipitated their presence at his
home or should not have tried to arrest him, the officers were still in lawful
discharge of their duties.  Id. at 389.  The court’s only mention
of crisis intervention training was in its recitation of the facts, stating
that an instructor for the course on crisis intervention testified at trial
that such training “goes out the window” when weapons are involved.  Id. at
375.  The statement had no bearing on the court’s discussion of whether the
phrase “lawful discharge of a public duty” is unconstitutionally vague.  See
id. at 388–89.

Outside
of alleging that the deputies failed to properly execute their crisis
intervention training, appellant does not otherwise dispute that the deputies
were in lawful discharge of their duties, nor does he challenge the sufficiency
of the evidence to prove aggravated assault.  Testimony shows that all of the deputies
at appellant’s house had gone there as part of their duties as peace officers, were
in uniform, and had arrived in marked patrol cars.  Appellant approached them
and pointed the pistol at each of them, despite being ordered to put the weapon
down.  Appellant does not challenge that the deputies were there in furtherance
of their duties, only that the way in which they discharged those duties was
improper.  However, appellant points to no evidence, and we have found none,
showing that the deputies criminally or tortiously abused their offices during
the encounter.

Thus,
viewing the evidence in the light most favorable to the verdict, we conclude
and hold that a rational factfinder could have found beyond a reasonable doubt
that all six officers were lawfully discharging an official duty and that the
evidence is sufficient to support appellant’s convictions on all six counts.  We
overrule appellant’s first point.

Insanity
Defense

In
his second point, appellant contends that he was deprived of “any meaningful
opportunity to present his insanity defense.”  Specifically, appellant argues
that Texas law creates a due process right for mentally ill criminal defendants
to be immediately evaluated upon arrest.  Appellant also argues that the trial
court erred in denying his motion for the appointment of an expert to aid in
his insanity defense.

Due Process Right to
Immediate Mental Health Examination

Appellant
argues that section 573.001 of the Texas Health and Safety Code required the
officers who arrested appellant to immediately take him to an inpatient mental
health facility instead of a regular hospital or the county jail.  According to
appellant, this failure to do so violated his due process rights by depriving
him of the ability to establish his mental state at or near the time of the
alleged offense.

To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State,
319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address
the merits of an issue that has not been preserved for appeal.  Wilson v.
State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g).  Almost
all error, even constitutional error, is forfeited if the appellant fails to
object at trial.  Fuller v. State, 253 S.W.3d 220, 232 (Tex. Crim. App.
2008), cert. denied, 555 U.S. 1105 (2009).  Preservation of error is a
systemic requirement that this court should review on its own motion.  Wilson,
311 S.W.3d at 473–74; Ford v. State, 305 S.W.3d 530, 532–33 (Tex. Crim.
App. 2009).

Appellant
did not raise this argument in the trial court, and it does not fall within the
categories of absolute, systemic, or waivable-only error for which no objection
is required.  See Saldano v. State, 70 S.W.3d 873, 888–89 (Tex. Crim.
App. 2002); see also Long v. State, 130 S.W.3d 419, 429–30 (Tex.
App.––Houston [14th Dist.] 2004, no pet.) (holding argument based on
requirement of Health and Safety Code must be preserved at trial).  Because
appellant failed to properly preserve his denial of due process claim, we
overrule this part of appellant’s second point.

Failure to Appoint an Expert
for the Defense

          Appellant
also argues that the trial court erred in denying his motion to appoint a
mental health expert to aid him in presenting his insanity defense.  Appellant
claims that he properly demonstrated that his sanity was likely to be a
significant factor at trial and thus he had a due process right to have a
court-appointed expert examine him and testify on his behalf.  Appellant
contends that the trial court’s failure to provide an expert denied him his due
process rights.  See Ake v. Oklahoma, 470 U.S. 68, 83–87, 105 S. Ct.
1087, 1096–98 (1985).

          Due
process requires access to the raw materials integral to the building of an
effective defense—including the appointment of an expert for indigent
defendants.  Griffith v. State, 983 S.W.2d 282, 286–87 (Tex. Crim. App.
1998) (citing Ake, 470 U.S. at 77, 105 S. Ct. at 1093), cert. denied,
528 U.S. 826 (1999).  But in implementing the right to receive an expert, the
defendant has the burden to make a sufficient threshold showing of the need for
expert assistance.  Id.  To carry his burden when requesting expert
assistance on the issue of sanity, the defendant must show that sanity is
likely to be a significant factor at trial.  Ake, 470 U.S. at 82–83, 105
S. Ct. at 1096.  The defendant’s claim must be based on more than undeveloped
assertions that expert assistance would be beneficial.  Rey v. State,
897 S.W.2d 333, 339 (Tex. Crim. App. 1995).  Generally, the trial court looks
for the defendant to support his motion for an expert with affidavits or other
evidence showing his need for expert assistance, as well as an explanation of
the defensive theory and why the expert assistance would be helpful in
establishing that theory.  Id. at 341.  When the court appoints a
disinterested expert to examine the defendant to determine whether sanity will
be a significant factor at trial and that expert determines that sanity will
not be a significant factor, then the right to an appointed expert is not
triggered.  De Freece v. State, 848 S.W.2d 150, 159 (Tex. Crim. App.), cert.
denied, 510 U.S. 905 (1993).  We review a trial court’s ruling on a motion
to obtain a court-appointed expert under an abuse of discretion standard. Griffith,
983 S.W.2d at 287.

          In
this case, the trial court appointed a disinterested expert, Dr. Norman, to
evaluate appellant.  Dr. Norman examined appellant and submitted his report to
the trial court.  In his report, Dr. Norman discussed appellant’s medical and
psychological history, as well as his mental state at the time of the
examination, and concluded that appellant was not criminally insane.  Dr.
Norman noted that appellant was likely under the influence of drugs and alcohol
at the time of the offense but also stated that voluntary intoxication cannot
be a basis for criminal insanity.  The doctor also noted that although appellant
may have been suffering from depression at the time of the offense, he was
functioning normally, had the capacity to understand what he was doing, and
knew that his behavior was wrong.

          In
appellant’s Motion for Appointment of Expert Assistance, he argued that he was
entitled to an expert other than Dr. Norman to assist in presenting his
insanity defense.  Appellant stated in his motion that “[i]t is believed that
all actions which substantiate the charge were the result of a psychotic
episode or some other mental aberration which rendered [him] insane.”  Appellant
argued that the appointment of an expert for the defense was both “necessary”
and “critical” to the preparation of his defense.  Appellant did not support
his motion with any affidavits, testimony, or exhibits.

          Because
the disinterested expert concluded that appellant’s sanity at the time of the
offense would not be a significant factor and because appellant brought forward
no evidence other than conclusory assertions in support of his motion, the
trial court could have reasonably found that appellant did not carry his burden
in showing that his sanity would be a significant factor at trial.  See Rey,
897 S.W.2d at 339; De Freece, 848 S.W.2d at 159.  Therefore, we hold
that the trial court did not abuse its discretion in denying appellant’s motion
for an appointed expert.

          We
overrule the remainder of appellant’s second point.

Confrontation
Clause Objection to Medical Records

In his
third point, appellant contends that the trial court erred in admitting medical
records over his objection in violation of the Confrontation Clause.  Appellant
argues that statements in the medical records pertaining to his mental and
physical state shortly after the offense are testimonial; thus, he has a
constitutional right to confront the medical professionals who made those
statements.

The
State argues that appellant did not properly preserve this point for appeal
because his objection at trial was not sufficiently specific.  Alternatively,
the State argues that the medical records are not testimonial, or if they are
testimonial, appellant was not harmed by their admission into evidence.

At
trial, the State offered into evidence medical records from appellant’s visit
to Lake Granbury Medical Center, where deputies took him immediately after his
arrest.  The State offered those records through Dr. Norman, who was testifying
as the State’s psychological expert.  While conceding that he had no basis for
a hearsay objection because the records were introduced with a business records
affidavit, appellant objected as follows:

[Defense Counsel]:  .
. .  However, I have an objection that’s under Crawford in that there
are medical conclusions that are made herein by a medical professional who
would not be here, we cannot confront or determine why and under what
circumstances he made those conclusions.  So, therefore, we’re going to object
to it on Crawford grounds, Your Honor.

 

[Trial Court]:  That’s
overruled, and State’s Exhibit 6 is admitted.

 

On
appeal, appellant specifically points to three statements in the medical
records that he argues violate the Confrontation Clause.  Those statements are
as follows:

ETOH
223[[2]]

 

.
. . .

 

Psychosocial: 
Patient demonstrates normal behavior appropriate for age and situation.  The
patient has adequate support systems available, is able to ambulate
independently, and can perform all activities of daily living without
assistance.

 

.
. . .

 

Neurologic: 
Alert, oriented to person, place and time.  Glascow Coma Score 15.  Moves all
four extremities equally with equal strength.  Patient denies numbness or
tingling.  Pupils are brisk, equal and reactive to light bilaterally.  Patient
is able to speak clearly.  Zero deficits noted.

 

Appellant
argues that these statements violate the Confrontation Clause because
scientific testing documents can be admitted as business records only when the
person who conducted the tests is available for cross-examination.  Appellant
argues that the Supreme Court’s holdings in Melendez-Diaz and Bullcoming
support his position.  See Bullcoming v. New Mexico, 131 S. Ct.
2705, 2713–14 (2011); Melendez-Diaz v. Massachusetts, 557 U.S. 305,
309–311, 129 S. Ct. 2527, 2531–32 (2009).

          As
discussed above, to preserve a complaint for our review, a party must have made
a timely and specific objection at trial.  Tex. R. App. P. 33.1(a)(1); Lovill,
319 S.W.3d at 691–92.  “The purpose of requiring a specific objection in the
trial court is twofold: (1) to inform the trial judge of the basis of the
objection and give him the opportunity to rule on it; (2) to give opposing
counsel the opportunity to respond to the complaint.”  Resendez v. State,
306 S.W.3d 308, 312 (Tex. Crim. App. 2009).  When part of the offered evidence
is admissible and part is not, the objecting party must specifically point out
which part is inadmissible.  Whitaker v. State, 286 S.W.3d 355, 369
(Tex. Crim. App. 2009); Human v. State, 749 S.W.2d 832, 838 (Tex. Crim.
App. 1988) (op. on reh’g).

          In
this case, appellant objected to a twenty-page medical record that contains
many measurements, notations, observations, and conclusions made by medical
professionals.  Appellant’s general objection to the admission of the entire
document was that it contained medical conclusions in violation of his
Confrontation Clause rights.  Although on appeal he has pointed out the
specific medical conclusions he believes are inadmissible, he did not do so for
the trial court.  See Hernandez v. State, 599 S.W.2d 617, 617 (Tex.
Crim. App. [Panel Op.] 1980) (op. on reh’g) (holding that objection in trial
court must identify the particular item objected to).  The trial court is not
obligated to search through the document and identify all of the inadmissible
statements on its own.  See Whitaker, 286 S.W.3d at 369.  Therefore,
appellant’s objection was insufficient to preserve this complaint for appeal.  Id.

          We
overrule appellant’s third point.

Conclusion

          Having
overruled appellant’s three points, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: 
August 30, 2012








 









[1]See Tex. R. App. P. 47.4.





[2]A later page in the
records notes that appellant’s ethanol level was 223 and “H,” or high.