# NO. 12-19-00285-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSHUA PAUL CALHOUN,*<br>*APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joshua Paul Calhoun appeals his conviction for evading arrest with a motor vehicle. He presents two issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with evading arrest with a vehicle. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Appellant's employer, Brooks Atwood, reported his pickup truck stolen. The next day, an employee at a retail store contacted Atwood and told him that Appellant was in the store and Atwood's truck was in the parking lot. Atwood contacted the police, who soon located the truck traveling on the highway. Deputy Spencer Gray attempted to stop the truck, but it accelerated and eventually eluded him.

Gray subsequently found the truck abandoned in a hay meadow. The police set up a perimeter and began to search for the driver. While patrolling the area, investigator Michael Shelley saw a man sit down on the porch of a residence. Shelley pulled into the driveway, and the man ran toward the tree line and into some heavy brush. Shelley ordered him to come out of the brush. The man came out of the brush and identified himself as Appellant.

Ultimately, the jury found Appellant "guilty" of evading arrest with a vehicle, and the trial court assessed his punishment at imprisonment for fifteen years. Appellant appealed to this Court. After holding that the evidence was insufficient to link Appellant to the conviction in the enhancement paragraph, we reversed the judgment as to punishment and remanded the case to the trial court for a new punishment hearing.[1]

On remand, Appellant represented himself at the new punishment hearing. The jury sentenced Appellant to seventeen and one-half years imprisonment and a $10,000 fine. This appeal followed.

## MOTION FOR EXPERT FUNDING

In his first issue, Appellant contends the trial court violated his due process rights by denying his request for funding and an expert to conduct an MRI of his brain.

## Standard of Review and Applicable Law

We review a trial court's ruling on an indigent defendant's motion requesting expert-witness funds (or the appointment of an expert witness) for abuse of discretion. *See Deason v. State*, 84 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998)); *Perales v. State*, 226 S.W.3d 531, 536 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The denial of an expert is subject to the harmless error analysis appropriate for constitutional errors. *Lighteard v. State*, 982 S.W.2d 532, 535 (Tex. App.—San Antonio 1998), *pet. ref'd*, 994 S.W.2d 189 (Tex. Crim. App. 1999). When an appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the appellate court must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

The United States and Texas Constitutions provide that no person may be deprived of life, liberty or property without due process of law. U.S. CONST. amend. V, U.S. CONST. amend. XIV § 1, TEX. CONST. art. 1 § 19. Due process requires that a defendant have access to the "raw material integral to the building of an effective defense." *Rey v. State*, 897 S.W.2d 333, 337 (Tex. Crim. App. 1995) (citing *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093, 84 L.

---

[1] *Calhoun v. State*, No. 12-15-00081-CR, 2016 WL 5845828, at *1 (Tex. App.—Tyler Sept. 30, 2016, pet. ref'd) (mem. op., not designated for publication).

Ed. 2d 53 (1985)). *Ake* required that the defendant be provided a psychiatric expert because the defendant demonstrated that his mental condition would be a "significant factor at trial." *Ake*, 470 U.S. at 83, 105 S. Ct. at 1096. *Rey* held that *Ake* is not limited to psychiatric experts but applies whenever an indigent defendant establishes a "substantial need for an expert, without which the fundamental fairness of his trial will be called into question." *Rey*, 897 S.W.2d at 338. The importance and complexity of the scientific issue in the case bears directly upon whether the appointment of an expert will be helpful. *Id.* The expert appointed must be one who will be available to testify in support of a defense if his opinion supports that defense. *See De Freece v. State*, 848 S.W.2d 150, 159 (Tex. Crim. App. 1993). But a defendant is entitled to more than an expert to testify on his behalf. *Id.* The expert must be one who can provide technical assistance in evaluating the strength of possible defenses, in identifying weaknesses in the State's case, and in preparing defense counsel to cross examine opposing experts. *Id.*

**Analysis**

Prior to the punishment hearing, Appellant filed an ex parte motion requesting funds, in which he sought funding for an MRI. The trial court conducted a hearing on Appellant's motion. At the hearing, Appellant provided an affidavit from his mother, Margaret Haller, which detailed a family history of brain disorders, including cerebral arteriovenous malformation and Chiari II Malformation.[2] Haller also averred that Appellant has a history of traumatic brain injuries starting at five years old. In addition, Appellant provided his grandmother's death certificate which confirmed her cause of death as cerebral arteriovenous malformation. Appellant testified at the hearing that he has a family history of brain conditions. He expressed concern that he has the same brain disorder as his family members and that an MRI would help to explain his conduct in the case. However, Appellant admitted undergoing an MRI when he was thirteen and the result did not demonstrate that he suffers from the genetic brain disorders over which he was concerned.[3] At the time, Appellant was diagnosed with attention deficit hyperactivity disorder

---

[2] According to the Mayo Clinic, a cerebral arteriovenous malformation is a tangle of abnormal blood vessels connecting arteries and veins in the brain; however, they are rarely passed down genetically and are usually present at birth. BRAIN AVM (arteriovenous malformation), https://www.mayoclinic.org/diseases-conditions/brain-avm/symptoms-causes/syc-20350260 (last visited July 27, 2020). Chiari II Malformation is a congenital condition in which brain tissue extends into your spinal canal. CHIARI MALFORMATION, https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited July 27, 2020).

[3] The record indicates that Appellant was approximately thirty-eight years old at the time of the punishment hearing.

(ADHD). He contended that his mother conducted research and believes an MRI would explain his behavior. The trial court denied the motion at the conclusion of the hearing.

Appellant had the initial burden of showing the need for expert assistance on a particular issue and that the expert assistance will be a significant factor at trial. *See Rey*, 897 S.W.2d at 339; *Ex parte Jimenez*, 364 S.W.3d 866, 877 (Tex. Crim. App. 2012). Here, Appellant offered little more than undeveloped assertions with no concrete reasons for requiring the trial court provide expert assistance. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1, 105 S. Ct. 2633, 2637 n.1, 86 L. Ed. 2d 231 (1985) (no deprivation of due process in court's decision not to appoint various experts and investigators where "petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial"); *see also Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) (en banc) (rejecting contention that trial court erred by refusing to grant motion for expert assistance in jury selection where "appellant offered nothing but undeveloped assertions that the requested assistance would be beneficial"). Appellant speculated without the support of medical records or reports to substantiate his request for an expert and funding. Both cerebral arteriovenous malformation and Chiari II Malformation are present at birth, and Appellant admitted that a previous MRI did not identify either disorder. Furthermore, other than Appellant's claim that the disorders may explain his behavior, Appellant offered no evidence of a correlation between the malformations and his conduct or the propensity to engage in criminal activity. Because the trial court could reasonably conclude that Appellant did not make a sufficient threshold showing of the need for expert assistance, we hold that the trial court did not abuse its discretion in denying Appellant's request for funding and an expert for purposes of conducting an MRI. *See Griffith*, 983 S.W.2d at 286-87. Appellant's first issue is overruled.

### EXCLUSION OF EVIDENCE

In his second issue, Appellant contends the trial court erred when it excluded several pieces of evidence. Specifically, he urges the trial court should have permitted him to present evidence of an alleged illegal search of his jail cell, his motion to disqualify the district attorney, and plea negotiations with the district attorney.

4

**Standard of Review & Applicable Law**

Trial court decisions to admit or exclude evidence will not be reversed absent an abuse of discretion. ***Beham v. State***, 559 S.W.3d 474, 478. (Tex. Crim. App. 2018). Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the "zone of reasonable disagreement." ***Id.***

Under Rule of Evidence 401, evidence is relevant if it has any tendency to make a "fact . . . of consequence" more or less probable than it would be without the evidence. TEX. R. EVID. 401. The Court of Criminal Appeals has described the trial court's role in determining relevance as a threshold matter in this way:

> Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a function of rule and logic. The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." The determination of relevance, *vel non*, thus depends upon one judge's perception of common experience. The process cannot be wholly objectified.

***Montgomery v. State***, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). These observations ring particularly true in the punishment context, where "there are no distinct 'facts ... of consequence' that proffered evidence can be said to make more or less likely to exist." *See **Ellison v. State***, 201 S.W.3d 714, 718-19 (Tex. Crim. App. 2006) (citing ***Rogers v. State***, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). Inevitably, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound." ***Murphy v. State***, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988); ***Beham***, 559 S.W.3d at 478.

Nevertheless, the Rule 401 concept of relevance has been incorporated into Article 37.07, Section 3(a) of the Texas Code of Criminal Procedure, which "governs the admissibility of evidence during the punishment stage of a non-capital criminal trial." ***McGee v. State***, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). Under that provision, "evidence may be offered" in the punishment stage of trial "as to any matter the court deems relevant to sentencing[.]" TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2019). The statute gives a non-exhaustive list of some evidence a trial court might legitimately deem "relevant to sentencing"— including, but not limited to, the "prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for

which he is being tried…" . *Id.* Evidence is "relevant to sentencing," within the meaning of the statute, if it is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *McGee*, 233 S.W.3d at 318 (citing *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006)); *Beham*, 559 S.W.3d at 479.

**Jail Cell Search**

Appellant urged that he should be allowed to present evidence concerning the search of his jail cell in August 2017. The following exchange occurred between Appellant and the trial court:

> Appellant: Basically, that, you know, the district attorney could have gathered information that could have been passed on through the illegal search and seizure, that now after I brought up the issue of the illegal search and seizure, Ms. Myles said I'm not going to use any of that information that I gathered, in the criminal case. She also stated that I solely directed Henderson County Sheriff's Department to obtain the evidence, solely for evidence for trial purposes.
>
> . . .
>
> The Court: And as I understand your position, without weighing in on whether it's true or not, but your position is that Elizabeth Myles asked the sheriff's department, the day before the trial was to start, to toss your cell and search your cell; is that right, is that your understanding?
>
> Appellant: It wasn't -- no, there was a directive, and the directive was to obtain information from me. It wasn't for administrative purposes. There's two different levels. There's administrative and there's court purposes. Administrative purposes, these can go in and search and seize -- these people went in for the sole purpose, and she openly admitted that she went in for the sole purpose of evidence for trial, and she obtained that evidence illegally.
>
> . . . by doing that, it subjected me to mental anguish that, you know, it does play factor in a sentencing. You know, if I'm sitting here, you know, subject to a mental situation, you know, it plays factor. Well, he's already been through enough. You see what I'm saying? The jurors can play that into factor. There's a whole bunch of elements across the board on a two to ten that can be take into consideration of that. You know, was anybody hurt? Was there any property damage? Did he suffer in any kind of mental anguish during the process? Was he being treated fairly going through the judicial system?

The trial court granted the State's motion in limine stating that the evidence is not relevant and if it "has any relevance at all, it's certainly outweighed by any potential prejudicial effect."

Appellant claims that information obtained during the search of his jail cell could have been used against him during trial. He further argues that evidence of the search itself would have assisted the jury in understanding "the manner [in which] he had been treated while he was going through the judicial system." However, such evidence has no bearing on issues relevant to sentencing, such as Appellant's prior criminal record, Appellant's general reputation or

6

character, an opinion regarding his character, circumstances of the charged offense, personal responsibility, and moral culpability. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *see also **Olivas v. State***, No. 11-16-00324-CR, 2018 WL 5833223, at *3 (Tex. App.—Eastland Nov. 8, 2018, pet. ref'd) (mem. op., not designated for publication). Such issues should be the focus of the jury's attention at punishment. For this reason, the trial court was within its discretion to determine that any probative value that the evidence might hold would do no more than confuse the jury by diverting the jury's attention from evidence pertinent to punishment or mislead the jury by encouraging the jury to give undue weight to the evidence. *See* TEX. R. EVID. 403; *see also **Casey v. State***, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007) ("'Confusion of the issues,' refers to a tendency to confuse or distract the jury from the main issues in the case" and "'Misleading the jury,' refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds"). And Appellant makes no attempt to demonstrate how he was harmed by exclusion of this evidence or how it affected the jury's sentence, such as how the sentence may have differed had the evidence been admitted. *See* TEX. R. APP. P. 44.2(b) (a non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded).

Based on the forgoing, we cannot say that exclusion of this evidence is outside the zone of reasonable disagreement. *See **Beham***, 559 S.W.3d at 478. As a result, the trial court did not abuse its discretion by excluding evidence of the search of Appellant's jail cell and this portion of Appellant's second issue is overruled.

## **Motion to Disqualify**

Appellant further contends the trial court abused its discretion in excluding evidence of his motions to disqualify the District Attorney. Appellant filed four separate motions to disqualify the Henderson County District Attorney. In his motions, Appellant sought a "disinterested prosecutor" be appointed District Attorney pro tem, exclusion of witness Cynthia Sandoval's testimony, and exclusion of all evidence of the alleged illegal search of his cell. At the hearing, Appellant explained to the trial court his basis for wishing to discuss the recusal of the District Attorney:

> THE COURT: And as I understand your position, without weighing in on whether it's true or not, but your position is that Elizabeth Myles asked the sheriff's department, the day before the trial was to start, to toss your cell and search your cell; is that right, is that your understanding?

7

MR. CALHOUN: It wasn't -- no, there was a directive, and the directive was to obtain information from me. It wasn't for administrative purposes. There's two different levels. There's administrative and there's court purposes. Administrative purposes, these can go in and search and seize -- these people went in for the sole purpose, and she openly admitted that she went in for the sole purpose of evidence for trial, and she obtained that evidence illegally.

THE COURT: Right. And that's the basis for you asking her to recuse herself and the district attorney's office to recuse themselves; correct?

MR. CALHOUN: Correct[.]

The State acknowledged that the District Attorney's office recused itself as a result of the motions:

THE COURT: And in fact, that was the basis for the district attorney's office voluntarily stepping aside and you were appointed?

MR. HERRINGTON: My understanding.

THE COURT: Okay. And likewise, at the time, that was Judge Moore, it was in his court, and I believe he had a hearing or two on this topic, did he not?

MR. CALHOUN: He did, Your Honor.

THE COURT: And –

MR. CALHOUN: And –

THE COURT: He has since recused himself as well, so it's now in my court.

The trial court granted the State's motion in limine regarding the recusal of the District Attorney's office stating that the evidence is irrelevant and any relevance is outweighed by the potential prejudicial effect.

The trial court appointed a disinterested attorney as District Attorney Pro Tem on May 20, 2019. No evidence of Cynthia Sandoval was presented at the punishment hearing and no evidence from the illegal search was presented to the jury. Appellant wished to discuss the motions to disqualify to demonstrate his alleged unfair treatment throughout the judicial process. However, the excluded evidence is not relevant to issues pertinent to sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *see also* **Olivas**, 2018 WL 5833223, at *3. Rather, the evidence suggests an attempt to litigate the legality of the search and the District Attorney's actions instead of focusing on the appropriate punishment for the crime charged. Thus, the trial court could reasonably conclude that the excluded evidence had a tendency to confuse or mislead

8

the jury from considering the evidence relevant to the main issues of punishment. *See* TEX. R. EVID. 403; *see also* **Casey**, 215 S.W.3d at 880. As a result, the trial court's determination that this evidence is irrelevant and that any relevance is outweighed by its prejudicial impact is not outside the zone of reasonable disagreement. *See* TEX. R. EVID. 403; **Beham**, 559 S.W.3d at 478. Because the trial court did not abuse its discretion in excluding this evidence, we overrule this portion of Appellant's second issue.

## Plea Negotiations

At a hearing on motions in limine, Appellant explained to the trial court why he believed plea negotiations, including an agreement for him to provide information regarding a different investigation, was relevant evidence for the jury. Appellant told the trial court as follows:

> Your Honor, on number six, I do have problems with that, because underneath the deal of plea negotiations, we had took it out of the hands of the jury. It wasn't the jury or wasn't the Judge, it was a negotiation period, and now that that negotiation period has been turned over to the jury, I think it's only fair that they see and understand the negotiations.

The trial court noted that both Appellant's and the State's motions in limine sought to exclude the plea negotiations and granted the exclusion stating, "I'm granting it. It's not relevant. And the case law is real clear with regard to that, that it's not admissible."

In **Smith v. State**, 898 S.W.2d 838 (Tex. Crim. App. 1995), *cert. denied,* 516 U.S. 843, 116 S. Ct. 131, 133 L. Ed. 2d 80 (1995), the Texas Court of Criminal Appeals upheld the trial court's exclusion of the State's plea bargain offer of life imprisonment. The State had argued that evidence of the plea bargain was inadmissible under Texas Rule of Evidence 408. *See* TEX. R. EVID. 408 (compromise offers and negotiations). After ruling that Rule 408 is inapplicable to plea offers, the Court evaluated the trial court's decision under Rule 403. **Smith**, 898 S.W.2d at 843. The Court admitted that the plea bargain "may be *minimally* relevant to a State District Attorney's office belief that the defendant was not a future danger." *Id.* at 844. However, it found that the probative value of such evidence is substantially outweighed by the danger of both unfair prejudice and misleading the jury. *Id.* at 843–44; TEX. R. EVID. 403. For instance, the multitude of motivations that a prosecutor may have in offering a life sentence in a capital case dilute the probative value of that offer and may mislead the jury as to the true motivations of the prosecutor. *See id.* at 844. The Court also identified a policy rationale for excluding plea offers by the government. Public policy favors the conclusion of litigation by compromise and

settlement, both in criminal and civil cases, and allowing a criminal defendant to introduce evidence about a sentence offered by the State during plea negotiations clearly militates against this policy. *See generally id.* at 844 n.6. If evidence of plea bargain offers were admissible, "the State would be ably discouraged from making such offers in the future, and plea bargaining is essential to the administration of justice in America." *Id.*

Accordingly, evidence about plea negotiations is generally inadmissible because such evidence is irrelevant or because the prejudicial effect of the evidence is greater than any probative value. *Munsinger v. State*, No. 12-11-00028-CR, 2011 WL 3915671, at *4 (Tex. App.—Tyler Sept. 7, 2011, no pet) (mem. op., not designated for publication). The decision to admit or exclude such evidence is soundly within the discretion of the trial judge. *See Prystash v. State*, 3 S.W.3d 522, 527–28 (Tex. Crim. App. 1999). Given the dangers of unfair prejudice and misleading the jury, as well as the policy reasons for excluding such evidence, we cannot say that the trial court abused its discretion in excluding evidence of plea negotiations. The remainder of Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered September 9, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 9, 2020**

**NO. 12-19-00285-CR**

**JOSHUA PAUL CALHOUN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. A-21,464)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*